## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Isaac Cotto, being first duly sworn, do hereby depose and state that:

## BACKGROUND

1.    I am a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been so employed since April 2024. Prior to HSI, I was employed by the Transportation Security Administration as a Transportation Security Officer from 2022 to 2024. I am an investigative law enforcement officer of the United States who is empowered to conduct investigations of or to make arrests for offenses enumerated in Title 21. As a Special Agent, my responsibilities include conducting investigations of alleged manufacturing, distribution or possession of controlled substances, importation of controlled substances, smuggling of goods into the United States, and related offenses.

2.    I have attended the Criminal Investigators Training Program, and the United States Homeland Security Investigations Special Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia. I was trained in conducting investigations related to drug smuggling, interdiction, and distribution activities. I am currently assigned to the Fajardo office, where investigations commonly conducted are related to violations of Titles 8, 18, 19, 21 and 31 of the United States Code ("U.S.C").

3.    I have participated in narcotics investigations as the case agent. I have debriefed defendants, witnesses, and informants who had personal knowledge of major narcotics trafficking organizations. Additionally, I have participated in many aspects of

narcotics investigations including conducting physical surveillance, writing and executing search warrants, and conducting arrests.

4.     Based on my training, experience, and information from other investigators, I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics, and the collection of money proceeds of narcotics trafficking.

5.     I am also familiar with methods employed by large narcotics organizations to thwart detection by law enforcement, including the use of vague and coded language, debit calling cards, cellular telephone technology, counter surveillance, false or fictitious identities, encrypted mobile applications, and encoded communications.

6.     I have received instruction and training and have participated in investigations involving drug trafficking organizations and the laundering of drug proceeds. I have used a variety of investigative techniques, including interviews of informants and cooperating witnesses; physical surveillance; controlled drug purchases; analyzing telephone pen register and caller identification system data; and search and arrest warrants that have led to seizures of narcotics, firearms, and other contraband.

7.     Because this Affidavit is submitted for the limited purpose of establishing probable cause, I have not included all details of every aspect of this investigation. I have set forth only the facts that I believe are necessary to establish probable cause of the commission of federal crimes or offenses. I am thoroughly familiar with the information contained in this Affidavit, either through personal investigation or discussions with other law enforcement officers involved in the investigation.

8.    This affidavit is submitted in support of a criminal complaint charging Kendrick NAZARIO with violations of 21 U.S.C. §§ 841, 846, 952(a), 960(b)(1)(B), and 963.

## PROBABLE CAUSE

9.    On April 26, 2026, at approximately 10:55 AM, Atlantic Standard Time, United States Customs and Border Protection Fajardo Marine Unit (FMU) encountered a vessel while conducting a routine border security patrol at approximately 5 nautical miles off the coast of Humacao, Puerto Rico.  The vessel was a blue yola type vessel, with one outboard engine.

10.    Upon approach, CBP Marine Interdiction Agents (MIAs) encountered four male occupants onboard the vessel. While boarding the vessel, MIAs observed a large opening in the posterior part of the vessel. MIAs then observed black wrapped packages consistent with size and shape of bales of narcotics through the opening. CBP MIAs proceeded to detain the individuals on board and transport them to the FMU office in Ceiba, Puerto Rico.

11.    Homeland Security Investigations (HSI) Fajardo Special Agents (SAs) later responded to FMU office. At the FMU office, CBP MIAs conducted a routine immigration and customs inspection of all individuals on board the vessel. Upon inspection, the four male individuals were identified as Jhon Dennis GUERRERO-TROTMAN, Jaime Jose MARVAL-GUTIERREZ, Jose Gregorio PEREIRA ORFILA, and Hector Gregorio JIMENEZ-HERRERA.

12. During the inspection, all four individuals stated that they were coming into the United States directly from Venezuela. After records checks, all individuals were found to be Venezuelan nationals illegally present in the United States.

13. At the FMU office, HSI SAs interviewed GUERRERO-TROTMAN, MARVAL-GUTIERREZ, PEREIRA-ORFILA and JIMENEZ-HERRERA. All individuals were read their Miranda rights in their native language Spanish. All individuals waived their rights, signed Miranda forms and decided to give verbal statements to agents.

14. During the interview GUERRERO-TROTMAN stated that he left from Venezuela approximately 5 days ago. GUERRERO-TROTMAN also stated that approximately 8 days ago, he was offered $20,000 USD to deliver a "merchandise". GUERRERO-TROTMAN stated that he believed the "merchandise" was narcotics.

15. During the interview of MARVAL-GUTIERREZ, he stated that they left Venezuela approximately 4 days ago. He stated that a person contacted him asking him to participate in the venture. MARVAL-GUTIERREZ stated that he was told by this person that the venture was to transport drugs to Puerto Rico. MARVAL-GUTIERREZ also stated that he was told he would get paid upon his return to Venezuela for the venture.

16. During the interview of PEREIRA-ORFILA he stated that they left Venezuela approximately 4-5 days ago. PEREIRA-ORFILA also stated that when the vessel departed, it was already loaded with what he believed was cocaine. He also stated that he was offered $10,000 USD for the venture. PEREIRA-ORFILA stated that all four individuals onboard operated the vessel in multiple occasions during the venture.

17. During the interview of JIMENEZ-HERRERA he stated that they left Venezuela approximately 4 days ago. He also stated that he was offered $30,000 USD for

4

the venture. JIMENEZ-HERRERA stated that he was told the venture was with the purpose of bringing narcotics into Puerto Rico. JIMENEZ-HERRERA also stated that during the departure from Venezuela, it was GUERRERO-TROTMAN who was operating the vessel.

18.    Later on, CBP MIAs conducted a search of the yola vessel. During the search, MIAs recovered 48 packages consistent with the size and shape of bales of narcotics. At the FMU office, HSI and FMU agents cut open the bricks and observed what appeared to be a white powdery substance. A field test was conducted and tested positive for cocaine. The packages were weighed and weighed approximately 1,350.2 kilograms.

 

19.    Based on my training and experience, the quantity of cocaine shown above found in the vessel and the manner in which it is packaged shows that the cocaine is intended for further distribution, not for personal use.

20. Further, based on my training and experience drug trafficking organizations do not entrust quantities of cocaine to individuals not intimately involved in the organization's illicit activities.

## CONCLUSION

21. I believe there is probable cause to believe that Jhon Dennis GUERRERO-TROTMAN, Jaime Jose MARVAL-GUTIERREZ, Jose Gregorio PEREIRA ORFILA, and Hector Gregorio JIMENEZ-HERRERA committed the following federal felony offenses: 21 U.S.C. § 841(a)(1) & (b)(1)(B)(ii), Possession with Intent to Distribute a Controlled Substance (5 kilograms or more of cocaine); and 21 U.S.C. §§. 846 Conspiracy to Distribute Cocaine; 21 U.S.C. §§ 952(a), 960(b)(1)(B), and 963, importation of 5 kilograms or more of cocaine, and conspiracy to do so.

Isaac Cotto
Special Agent
Homeland Security Investigations

Sworn in accordance with the requirement of Fed. R. Crim. P. 4.1. by telephone at __12:51 p.m.__ on this 27h day of _April_ 2026, in the District of Puerto Rico.

HON. HECTOR RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO

6